

# FLORIDA FORENSIC ENGINEERING, INC.

6706 Benjamin Road, Suite 100, Tampa, FL • 813-868-FFEI (3334)
9380 Ulmerton Road, Largo, FL 33771 • 727-581-1946
Toll Free: 800-966-1946
www.FlaForEng.com

## ENGINEERING REPORT

**TITLE:  Patent Analysis of "Container Handling and Transporting Device" for Portastor, Inc.**

DATE:  24 November 2004                    FFEI File # 95919

FOR:   Christopher E. Neuguth
          Portastor, Inc.
          18748 Titus Road
          Hudson, FL, 34667


PHONE: 727-858-7192       FAX: 727-848-5648

RE: PODS, Inc. v. Porta Stor, Inc.


BY: Elliot L. Stern, Ph.D., PE
     Florida Forensic Engineering, Inc.


## I. BACKGROUND:

On 11/19/04 Mr. Christopher E. Neuguth requested that Florida Forensic Engineering, Inc.

analyze the subject of U.S. Patent Application 10/616,597 and provide an analysis with respect

to U.S. Patent 6,071,062. The following information sources were provided by Portastor, Inc. to

Elliot L. Stern, Ph.D., P.E.:

- U.S. Patent 6,071,062 prosecution history ("file wrapper");

- Draft of "Container Handling and Transporting Device" for Portastor, Inc.;

- VHS video tape and CD-ROM video purportedly recorded by Howard Bennett, Investigator, of

   the operation of the Portastor device;

- Two Declarations of Lee A. Swanger, Ph.D., P.E. re: U.S. Patent 6,071,062;

- A 27 page set of notes purportedly written by Edward Dutkiewicz, Esquire regarding expert

  report form concerning PODS, INC. v. PORTA STOR, INC.;

- An oral discussion with Mr. Christopher E. Neuguth and Mr. Chris Cannava at Portastor, Inc.

  on 11/22/04;

- A demonstration of the "Container Handling and Transporting Device" by Mr. Chris Cannava

  at Portastor, Inc. on 11/22/04.


Additional Information obtained by Elliot L. Stern, Ph.D., P.E.:

- Digital photographs and video of the "Container Handling and Transporting Device"

demonstrated by Mr. Chris Cannava at Portastor, Inc. on 11/22/04;

- The following U.S. Patents:

- 6,155,770  Warhurst, "Apparatus for Lifting, Handling and Transporting a Container";

- 6,071,062  Warhust et al., "Apparatus for Lifting, Handling and Transporting a
  Container";

- 5,800,114  Secondi, "Container Handling Device";

- 5,417,540  Cox, "Cargo Container Handling and Transport System";

- 5,006,031  Fossing et al., "Elevating and Transforming Device";

- 4,897,011  Brower, "Mechanical Lift Device";

- 4,880,124  Feider et al., "Straddle Crane Steering System";

- 4,861,218  Lamer, "Mobile Boat Hoist";

- 4,765,594  Riedl et al., "Lifting and Depositing Device for Transportable Larger
  Containers,…";

- 4,712,966  Gross, "Material Handling Rack with Transportation Means";

- 4,522,550  Whitehouse, "Detachable Platform for Truck Body Trailer";

- 4,491,452  Matovich, "Load Transporting Apparatus";

- 4,297,068  Concha et al."Cargo Container Transporter";

- 4,236,859  Stearn et al., "Mobile Hoist";

- 4,219,094  Sturgill, "Straddle Crane Apparatus";

- 3,541,598  Dousset, "Mobile and Transportable Apparatus for Loading and Unloading Containers onto Transporters"

## II. CLAIMS ANALYSIS:

A complete copy of the U.S. Patent 6,071,062 entitled  "Apparatus for Lifting, Handling, and Transporting a Container" (hereinafter referred to as '062) is included with this report. For purposes of summary and analysis the Abstract is provided as follows:

**Abstract**

A hydraulically actuated mobile carrier frame wraps around a storage container of standard size and lifts the container from the ground onto a transport vehicle. The carrier frame subsequently returns the container to the ground. The carrier frame stays with the vehicle. The carrier frame can be expanded transversely to clear the vehicle for loading and unloading, then contracted into notches in the vehicle platform to be releasably locked to the vehicle for over the road transport.

The two independent claims which are the subject of this analysis are listed below.  In Claim 1, the apparatus **ELEMENTS** are in bold, capital letters; **sub-elements** are in lower case, bold letters; and limitations are in *italics*.

3

1. An apparatus for lifting, handling and transporting a container having right and left sides and front and rear ends, the apparatus comprising:

**a CARRIER FRAME** including **right and left longitudinal elements** *juxtaposed with the right and left sides, respectively, of the container to be handled and transported*, each **longitudinal element** *extending between opposite first and second ends*, the carrier frame having **front and rear transverse elements** *juxtaposed with the front and rear ends*, respectively, of the container to be handled and transported, *each transverse element extending between opposite right and left ends*, the left ends of the **front and rear elements** *being adjacent to the first and second ends*, respectively, of the **left longitudinal element**, and the right ends of the **front and rear elements** *being adjacent to the first and second ends, respectively, of the* **right longitudinal element**, the **CARRIER FRAME** further including **a plurality of generally vertical upright members**, each upright member *extending between opposite upper and lower ends*;

**BEARING MEANS** *attached to each upright member lower end*, for ground bearing and relative movement of the upright members with the ground;

**ELEVATING MEANS** *for elevating and lowering the carrier frame* with respect to the ground;

**POSITIONING MEANS** *connected to the carrier frame* for moving and positioning the carrier frame with respect to the container, and for moving and positioning the carrier frame and container together with respect to a transport vehicle having a platform when the container is to be loaded on to and off from said transport vehicle;

**SUPPORTING MEANS** *connected to the* **CARRIER FRAME** *and to the container* for supporting the container to the frame; and

**MEANS OF PROVIDING HYDRAULIC POWER** to actuators,

wherein the **CARRIER FRAME** is capable of being elevated *to be moved over the container* and is capable of being *lowered around the container* for attaching the carrier frame to the container for subsequent lifting, handling and transporting of the container.

In the following Claim 29 each **step** is in bold lettering and the limitations are in *italics*.

29. A method of lifting, handling and transporting a container on to and off from a transport vehicle having a cargo carrying platform, the method comprising the steps of:

**positioning a carrier frame** *around the container* on the transport vehicle platform;

**releasably attaching the carrier frame** *to the container*;

**extending rear and front upright members** *downward* into a ground-engaging position;

**elevating the carrier frame** *with hydraulic means* and **container** *above the transport vehicle platform*;

**expanding the carrier frame** *with hydraulic means to clear the sides of the transport vehicle platform*;

**driving the transport vehicle** *out from under the carrier frame and container*;

**lowering the carrier frame and container** *until the container rests upon the ground*;

**releasing the carrier frame attachment** *from the container*;

**activating a steering and mobility means** *for providing driving power and directional control to wheels at the lower end of the rear upright members*;

**directing the movement** *of the carrier frame away from the container*;

**elevating the carrier frame** *to an elevation higher than that of the transport vehicle platform*;

**moving and positioning the carrier frame** *over the transport vehicle platform*;

**deactivating the steering and mobility means**;

**retracting the carrier frame** *with hydraulic means to align the upright members in close proximity to the transport vehicle platform*;

**lowering the carrier frame** *to rest upon the transport vehicle platform*;

**retracting the upright members** *upward away from the ground-engaging position so that the transport vehicle is able to transport the carrier frame*;

**extending the upright members** *downward into a ground-engaging position*;

**elevating the carrier frame** *with hydraulic means above the transport vehicle platform*;

**expanding the carrier frame** *with hydraulic means to clear the sides of the transport vehicle platform*;

**activating a steering and mobility means** *for providing driving power and directional control to wheels at the lower end of the rear upright members*;

**directing the movement** *of the carrier frame away from the transport vehicle platform*;

**moving and positioning the carrier frame** *around the container*;

**lowering the carrier frame** *adjacent to the ground*;

**releasably attaching the carrier frame to the container**;

**elevating the carrier frame and container** *to an elevation higher than that of the transport vehicle platform*;

**moving and positioning the carrier frame and container** *over the transport vehicle platform*;

**deactivating the steering and mobility means**;

**retracting the carrier frame** *with hydraulic means to align the upright members in close proximity to the transport vehicle platform*;

**lowering the carrier frame and container** *to rest upon the transport vehicle platform*; and

**retracting the upright members** *upward away from the ground-engaging position so that the transport vehicle is able to transport the carrier frame and container*.

III. ANALYSIS OF CLAIMS AND ALLEGED INFRINGING DEVICE

The complete '062 was evaluated and the referenced as well as other potentially related prior art was reviewed. The analysis was primarily limited to Claims 1 and 29 of '062 with comparison to the alleged infringing device described as the "Container Handling and Transporting Device" of Portastor, Inc. hereinafter referred to as the "Portastor."

Both Claim 1 and Claim 29 employ the patent language "comprising," using the words, "the apparatus comprising:" and "the method comprising the steps of:," respectively. For the purpose of this analysis this language is interpreted to mean including all of the elements and method steps recited in the corresponding claim and possibly additional elements or steps. For this reason there is no literal infringement of either Claim 1 or Claim 29 by the Portastor and the remaining analysis will pertain to the alleged infringement under the doctrine of equivalents. The Portastor was evaluated to determine if the device or method contains equivalent elements or steps to those of the claimed '062 and to establish whether one of ordinary skill in the art would consider the Portastor performed substantially the same function by substantially the means disclosed. Potential prior art and references cited by '062 where additionally reviewed in order to evaluate equivalency against the context of the patent, the prior art and the alleged infringing Portastor. In discrete analysis of the individual elements and steps of the patent claims, careful consideration of the limitations and conceptual scope was maintained to avoid extending the coverage of the patent to include inventions that were already in prior art.

As with many similar devices, the overall function of '062 and the Portastor is to lift, handle and transport storage or cargo containers. In addition to the manipulation of containers, '062 and the

Portastor employ methods of positioning the devices and locating the load (containers) onto an additional transport vehicle. In a general sense these common goals are performed by a variety of systems including cranes, hoists, gantries and jacks and specific application to containers is well taught.

Claim 1 of '062 teaches an apparatus consisting in part of a carrier frame. As shown in Figure 1, the carrier frame consists of right and left longitudinal elements in connection with front and rear transverse elements relative to a container thereby fundamentally establishing a singular rectangular-shaped frame, as outlined in Figure 1 by the dashed lined region, which completely encloses the perimeter of the container. The singular rectangular-shaped frame distinguishes '062 from prior art such as U.S. Patent 3,541,598, Dousset, the figures of which are shown in Figure 2, by use of the longitudinal elements connecting the transverse ends. The complete carrier frame is defined with the addition of a plurality of generally vertical upright members, each upright member extending between opposite upper and lower ends as shown in Figure 1. The complete carrier frame establishes a singular rectangular-shaped frame structure, which is primarily planar and parallel with the ground, and a plurality of vertical members. Such a carrier frame configuration distinguishes '062 in part from prior art in that the structural connection between the two transverse ends of the device are provided by the longitudinal members and not the structure of the container itself and the '062 frame completely surrounds the container as a result of the juxtaposition of the frame members. In comparison to the carrier frame element disclosed in '062, the Portastor device, as shown in the annotated photograph in Figure 3, consists of a general frame configuration taught as a straddle crane. Examples of prior art of this configuration is shown in Figure 4.  As seen in Figure 3, the Portastor frame consists of right and left rigid, rectangular side frames, predominantly perpendicular to the ground.  Each side frame is established by substantially parallel, vertical column members

rigidly fixed to substantially parallel, horizontal members. The two side frames are connected by an upper, header beam and lower cross beam at a single corresponding end of each side frame. The resulting frame assembly thereby establishing an open, U-shaped frame structure which inherently does not encircle the entire perimeter of the container. The U-shaped frame structure is additionally supported by vertical legs. The carrier frame element of '062 and the U-shaped vertical frame of the Portastor are not substantially equivalent in either form or function, which inherently results from the different design concepts. The difference in fundamental configuration provides the Portastor the ability to approach a container from one end and be located without fully enclosing the container perimeter. As a result of the open, U-shaped frame of the Portastor, the frame can be located into a lifting position of a container independent of the height of the container. The frame element of Portator therefore cannot be considered equivalent to the carrier frame of '062 because the substantially different members and resulting assembly of Portastor provides additional functionality overcoming limitations of the '062 carrier frame design.

Both the '062 device and the Portastor contain well-taught elements of a bearing means attached to the lower end of upright members to provide movement relative to the ground; elevating means for raising or lowering the container; positioning means for moving the device relative to the container or transport vehicle; and supporting means connected to the container. The '062 device combines these elements in such a fashion that the container is connected via the supporting means to the carrier frame directly and the elevating means of the carrier frame is inherently used to raise or lower the container thereby coupling the function of lifting the container with the elevation of the carrier frame. The Portastor device through its design and use of additional longitudinal lifting bars and separate, corresponding lifting means maintains functional independence between the elevation of the frame element and the lifting of the container. The independence of these functions provides

the Portastor the ability to raise the container off the ground to a height as required while lowering the frame structure to decrease the extension of the vertical leg members and correspondingly increase the overall stability of the system while transporting and initially positioning the container and device together. The location of container by the Portastor while maintaining the frame below the transport vehicle platform and minimizing extension of the legs is seen in Figure 5. In contrast see Figure 6, when placing the container on a separate transport vehicle the '062 elevation means must have sufficient range of motion to elevate the lowest portion of the carrier frame to at least the transport vehicle's platform height plus any additional hang length created by slack between the supporting means between the container and carrier frame. When utilized the Portastor in a stationary application where transport vehicles "drive in" to have containers loaded, this functional independence between the container lifting and frame elevation additionally provides a stationary hydraulic control location eliminating the need for a remote or tethered control system. The advantage of independent lifting and frame elevation is also evident when considering transportation and location (pickup/delivery) in a building or covered structure with limited overhead clearance. On the contrary, when attempting to significantly raise a container, such as required for stacking, the independent elevation and lifting means of the Portastor may be used in series to provide a range of overall container lifting height greater than the length of either actuator. Although the '062 device and the Portastor may be used in a limited manner to perform substantially similar tasks, the lifting means of the container, the resulting functionality and capabilities are not substantially equivalent.

Finally, relative to Claim 1 of '062, the carrier frame is capable of being elevated to be **moved over** the container and capable of being **lowered around** the container for subsequent lifting, handling and transportation of the container. The single rectangular-shaped frame lowered around, thereby fully encircling the perimeter of the container, requires the capability of the frame being

10

elevated over the container. This inherent requirement limits both the height of containers to be lifted and limits its use in locations with restricted overhead clearance. The range of motion of the elevating means of the '062 device limits the height of the container which can be used. The ability to perform similar functions but subject the substantially different limitations which are overcome by the design elements or Portastor indicates the '062 device and Portastor are not equivalent.

In the analysis Claim 29 of '062 teaching "a method of lifting, handling and transporting a container on to and off from a transport vehicle having a cargo carrying platform," again, is it critical to evaluate each step and potential equivalence thereto in light of the context of the patent, the prior art and the alleged infringing Portastor. This is additionally important related to the potential equivalence of the function of the step because the normal operation of prior art must be considered. The interpretation of the '062 steps comprising the method of Claim 29 cannot be so wide in scope as to extend coverage to the methods inherently employed, if not explicitly taught, by prior art.

Each step of '062 Claim 29 is individually reviewed and compared to the steps employed by the use of the Portator.  In the following Claim 29 each **step** is in bold lettering and the limitations are in *italics*. Analysis comments follow each step.

29. A method of lifting, handling and transporting a container on to and off from a transport vehicle having a cargo carrying platform, the method comprising the steps of:

**positioning a carrier frame** *around the container* on the transport vehicle platform; (see Figure 7) The American Heritage Dictionary provides the following definitions of the adverb "around":
1. a) On all sides, b) In close to all sides from all directions; 2) In a circle or with a circular motion;

3) In circumference or perimeter; …

The open, U-shaped frame of the Portastor does not fully encircle the perimeter of the container to be positioned relative to the container. Expanding the scope of interpretation of "around" would include nearly all straddle cranes and hoists, as well as prior art for which lifting legs or transverse end units are positioned on the ends, sides or corners of the container.

**releasably attaching the carrier frame** *to the container*;

**extending rear and front upright members** *downward* into a ground-engaging position;

**elevating the carrier frame** *with hydraulic means* and **container** *above the transport vehicle platform*;

The step indicates both the carrier frame and the container are elevated above the transport vehicle platform. As the Portastor maintains independent container lifting and frame elevating means the operation of Portastor inherently does not require the carrier frame to be located above the transport vehicle cargo carrying platform in order to place the container on the platform. Compare the frame height and leg extension of the Portastor in Figure 5 to the carrier frame and vertical members, respectively, of the '062 in Figure 6.

**expanding the carrier frame** *with hydraulic means to clear the sides of the transport vehicle platform*;

Although the Portastor frame does have the capacity to expand the closed-end, header and cross beam members the open, U-shaped configuration of the frame does not provide sufficient torsional rigidity of the side frames to expand the carrier frame width while the front and rear legs are in a ground engaging position as required by the prior step. This limitation is a disadvantage of the open

frame configuration of the Portastor in comparison to the more rigid, fully closed carrier frame which is positioned around the container.

**driving the transport vehicle** *out from under the carrier frame and container*;

**lowering the carrier frame and container** *until the container rests upon the ground*;

**releasing the carrier frame attachment** *from the container*;

**activating a steering and mobility means** *for providing driving power and directional control to wheels at the lower end of the rear upright members*;

**directing the movement** *of the carrier frame away from the container*;

**elevating the carrier frame** *to an elevation higher than that of the transport vehicle platform*;

The interpretation of this step must be limited to the assumption that the main portion of the carrier frame is completely and entirely elevated higher than the height of the transport vehicle platform and that the upright members are not included as they are in contact with the ground. Although the Portastor may be capable of such an action, it does not require and therefore does not perform this step of elevating the frame higher than the height of the transport vehicle platform (see Figure 5). Under normal use, employing the potential capability of the Portastor to elevate the frame higher than the transport vehicle platform would be an unnecessary waste of time and decrease the lateral stability of the entire system by extending the legs longer than required to perform the task.

**moving and positioning the carrier frame** *over the transport vehicle platform*;

The Portastor does not move or position the frame over the platform, implying an elevation greater than the transport vehicle platform.

**deactivating the steering and mobility means**;

**retracting the carrier frame** *with hydraulic means to align the upright members in close proximity to the transport vehicle platform*;

**lowering the carrier frame** *to rest upon the transport vehicle platform*; (see Figure 7)

The entire Portastor frame is not elevated higher than the transport vehicle platform as required in a previously taught step therefore the majority of the frame cannot be lowered to rest upon the platform. The transport vehicle for the Portastor is required to have frame extenders or "outriggers" located near the rear of the vehicle to support the Portastor frame thus limiting the transport vehicle to one specially equipped. The Portastor frame located on the transportation vehicle frame outriggers, below and wider than the transportation vehicle platform is shown in Figure 8. With the Portastor frame removed, the frame outrigger and their location below the transportation vehicle platform may clearly be seen in Figure 9. The outrigger end is designed to be removed from the frame rigger base and rotated 90 degrees, as shown in Figure 9, to limit the height of the Portastor frame height for locating prior to transportation.


**retracting the upright members** *upward away from the ground-engaging position so that the transport vehicle is able to transport the carrier frame*;

If the functionality of extending the width of the Portastor is to be utilized, it must be performed while the frame is located on the transportation vehicle prior to the ground engagement step. The Portastor inherently must perform even similar steps in a different order.


**extending the upright members** *downward into a ground-engaging position*;

**elevating the carrier frame** *with hydraulic means above the transport vehicle platform*;

**expanding the carrier frame** *with hydraulic means to clear the sides of the transport vehicle platform*;

As previously stated the Portator open frame design does not permit extending the frame width while the front and rear legs are engaged with the ground.

**activating a steering and mobility means** *for providing driving power and directional control to wheels at the lower end of the rear upright members*;

**directing the movement** *of the carrier frame away from the transport vehicle platform*;

**moving and positioning the carrier frame** *around the container*;

Same issue regarding the carrier frame around the continainer.

**lowering the carrier frame** *adjacent to the ground*;

**releasably attaching the carrier frame to the container**;

**elevating the carrier frame and container** *to an elevation higher than that of the transport vehicle platform;*

Same comments pertain here as the corresponding step previously described.

**moving and positioning the carrier frame and container** *over the transport vehicle platform*;

Same comment apply regarding the elevation would have to be higher in order to be over.

**deactivating the steering and mobility means**;

**retracting the carrier frame** *with hydraulic means to align the upright members in close proximity to the transport vehicle platform*;

**lowering the carrier frame and container** *to rest upon the transport vehicle platform*; and

The interpretation of this step must be limited to the assumption that the main portion of the carrier frame is completely and entirely elevated higher than the height of the transport vehicle platform and

that the upright members are not included as they were in contact with the ground when the carrier frame was elevated and position over the transportation vehicle platform. The complete and entire carrier frame and container are taught to rest upon the vehicle platform. As was previously explained, the Portastor requires the use of transport vehicle frame extensions on which the frame rests below the level of the platform. Because of the location of the Portastor side frame members relative to the transport vehicle platform, the Portastor Side frame elements nor the legs within the corresponding vertical column members can be retracted to a width narrower than the transportation vehicle platform as depicted for the '062 carrier frame in Figure 7 and providing the means to rest the carrier frame upon the platform.

**retracting the upright members** *upward away from the ground-engaging position so that the transport vehicle is able to transport the carrier frame and container.*

The Portastor device by the nature of its design configuration cannot perform substantially all of these steps, in substantially the same order or function. In addition, limitations of the Portastor and additional requirements of the transportation vehicle preclude the normal operation and use of the Portastor by an equivalent method to '062. Additionally, Claim 29 of '062 describes a method which lacks sufficient detail to determine how the carrier frame is located around the container. If this ambiguity allows interpretation including the separate location of front and rear carrier members around the container thus forming a structural frame in combination with the container, then the device as taught by Dousset in U.S. Patent 3,541,598 and shown in Figure 2, and additionally U.S. Patent 4,491,452 by Matovich, would be operated by a substantially equivalent method to '062 providing for obvious improvements. This ambiguity generates question as to the validity of Claim 29 of '062.

IV. OPINION

Review and analysis of the information described in Section I. and specifically the analysis of the

Portastor device (the subject of U.S. Patent Application 10/616,597) with respect to Claim 1 and

Claim 29 of U.S. Patent 6,071,062 yields the following:

1.  The Portastor device does not literally infringe on either Claim 1 nor Claim 29 of '062.

2.  The Portastor device does not infringe on Claim 1 by means of the doctrine of equivalence.

3.  The normal and intended operation of the Portastor device in conjunction with the required
    transport vehicle does not infringe on the method taught by Claim 29 of '062 under the
    doctrine of equivalents.

The basis of these opinions are summarized by the preceding report sections.

V. QUALIFICATIONS of Elliot L. Stern, Ph.D., P.E.

1.  I am a Principal Engineer and the President of Florida Forensic Engineering, Inc., an
    engineering and consulting services company.

2.  I am President of Design & Manufacturing Engineering, Inc., a technology research and
    development company, and director for Intellectual Property.

3.  My specialization is in the design, engineering, manufacturing, dynamics, testing, patenting,
    process optimization and failure analysis of aerospace, automotive, consumer products,
    industrial and commercial machinery, and medical devices.

4.  I have a B.S.M.E. from Purdue University, West Lafayette, IN, May 14, 1983, a M.S. in
    Mechanical Engineering from University of Florida, Gainesville, FL, May 4, 1985, and a
    Ph.D. in Mechanical Engineering, Phi Kappa Phi, University of Florida, Gainesville, FL,
    Aug. 12, 1989.

5.  I am a Professional Engineer, Florida State Board of Registration, No. 047986.

6.  A summary copy of my Curriculum Vitae is attached to provide additional information

    regarding my credentials.


_____          ___30 November 2004_____
Elliot L. Stern, Ph.D., PE                        Date
Principal Engineer


This document has been Signed and Sealed by Registered Professional Engineer (PE) Elliot L. Stern,

Florida PE License #047986 that was issued by the Florida Department of Professional Regulation,

Tallahassee, Florida.

**95919 Portastor Exhibits**



**Figure 1 – Embodiment of U.S. Patent 6,071,062 Warhurst**



**Figure 2 – Views of U.S. Patent 3,541,598 Dousset**



**Figure 3 – Portastor Device**



US 4,219,094

US 4,236,859

US 4,861,218

US 4,880,124

**Figure 4 – Prior Art Straddle Cranes**



**Figure 5 – Portastor Frame Lower than the Transport Vehicle
Platform and the Container Raised by Separate Lift Bars**



**Figure 6 – '062 Carrier Framer and Contain Raised Higher and
Over the Transport Vehicle Platform**



**Figure 7 – '062 Carrier Frame and Container Located on the Transportation Vehicle Platform**



**Figure 8 – Portastor Located on the Frame Outrigger Below
the Transportation Vehicle Platform Height**



**Figure 9 – Portastor Transportation Vehicle Frame Outrigger
for Supporting the Frame Below the Platform Height**



# FLORIDA FORENSIC ENGINEERING, INC.

6706 Benjamin Rd, Ste 100, Tampa, FL  33634
Phone:  Tampa / 813-868-3334 ● Fax: 813-514-1532
Toll Free: 800-966-1946
www.FlaForEng.com

---

**Elliot L. Stern, Ph.D., P.E. – Curriculum Vitae**

**Professional Education:**

- Ph.D., 1989        Mechanical Engineering, University of Florida, Gainesville, FL (Phi Kappa Phi)
- M.S., 1985        Mechanical Engineering, University of Florida, Gainesville, FL
- B.S., 1983        Mechanical Engineering, Purdue University, West Lafayette, IN (National Dean's List, Phi Eta Sigma)

**Professional Licensure:**

- Professional Engineer, Florida State Board of Registration, No. 047986

**Professional Experience:**

- 08/04 – Present        Florida Forensic Engineering, Inc., Tampa, FL,
  President, Consulting Engineer
- 08/89 – Present        Independent Consultant, Tampa, FL
  Specialize in rapid, cost-effective, technical solutions and training in machining, manufacturing processes and controls, and design through modeling, testing, analysis and design.  Applications in aerospace products, automotive, consumer products, machine tools and medical.
- 06/94 – Present        Design & Manufacturing Solutions, Inc., Tampa, FL,
  President
- 08/89 – 06/94        Auburn University, Auburn, AL, Department of Mechanical Engineering
  Assistant Professor, Tau Beta Pi, Faculty Advisor, Alumni Award for Teaching Excellence
- 08/90 – 05/94        Machining Dynamics Laboratory, Auburn, AL
  Director
- 08/87 – 1989        Machine Tool Laboratory, University of Florida, Gainesville, FL
  Research Assistant
- 12/85 – 06/87        General Motors Technical Center, Technical Center, Warren, MI
  Senior Project Engineer
- 05/85 – 12/85        McDermott, Inc., Advanced Technology Division, Lynchburg, VA
  Automation Specialist
- 08/83 – 05/85        University of Florida, Gainesville, FL
  Research Assistant and Graduate Teaching Assistant
- 05/82 – 08/83        Honeywell, Inc., Tampa, FL
  Printed Circuit Board Designer

**Instructor and Developer (Auburn University Courses):**

- ME 480        Mechanical Engineering Design
- ME 485        Manufacturing Processes and Systems

Elliot L. Stern, Ph.D., P.E. – Curriculum Vitae – Page 2

- ME 562          Modal Analysis in Design Applications (applied Vibrations, theoretical and experimental)
- ME 493, 494    Advanced Projects (Capstone Design project advisor)
- MFE 686         Control of Manufacturing Processes

**Professional Affiliations and Awards:**

- American Society of Mechanical Engineers, Associate Member (ASME)
- Society of Automotive Engineers (SAE)
- National Society of Professional Engineers (NSPE)
- Florida Engineering Society (FES)
- The Scientific Research Society, Sigma Xi, former Member

**U.S. Patents and Partial Foreign Patent list**

- 6,443,673 Tunable boring bar for suppressing vibrations and method thereof  (co-inventor) AU772398, WO0153025, CA2396366, EP1248692
- 6,085,121 Device and method for recommending dynamically preferred speeds for machining CN1271305, CN1096336, WO9915310, EP1017535, ES2149150, AU7281618
- 5,700,116 Tuned damping system for suppressing vibrations during machining (co-developed)
- 5,518,347 Tuned Damping System for Suppressing Vibrations During Machining (co-developed) CA2220938, WO9637338, EP0827440, RU2127180, ES2114838
- 5,593,369 Inflatable Hand Orthosis
- 5,437,611 Dynamic Brace Joint
- 5,383,827 Inflatable Hand Orthosis
- US Pat App A Water-Clear Fish Hook

**Selected Publications**

- E. Stern, Compression Wave Injection: a mixture injection method for two-stroke engines based on unsteady gas dynamics (multiple publications, seminars and presentations).
- E. Stern, Understanding and Applying Machining Process Dynamics Next Generation Products Come On-Line (multiple publications, seminars, training short courses and presentations).
- E. Stern, Use of Vibrations and Modal Analysis for Machining (multiple publications).
- E. Stern, 21.8 Mechanics of Machining (Dynamics), Materials and Processes in Manufacturing, Ninth Edition, Degarmo, et al., ISBN 0-471-03306-5, John Wiley & Sons, Inc., 2003.
- J T. Black and Elliot Stern, Symposia – "History of Manufacturing, Metal Cutting: 1907 – 1997," American Society of Mechanical Engineers / Manufacturing Engineering Division, International Mechanical Engineering Courses and Exposition, "Intelligent and Flexible Symtoms," November 16-21, 1997.
- E. Stern, "Good Vibrations," Cutting Tool Engineering, Volume 47, Number 9, December, 1995, pp39-44.
- E.L. Stern and G. Carmichael, "Honing Comes Full Circle, Cutting Tool Engineering, April, 1995.
- E.L. Stern and R.P. Pellini, "A Study on the Effect of Tool Wear on Machining Forces," Symposium on Modeling, Monitoring and Control in Machining Processes, ASME/WAM, New Orleans, LA, November 28, 1993 – December 3, 1993.
- E.L. Stern and V.R. Govande, "The Use of Modeling and Simulation for Control of Single Point Machining Processes," Symposium on Modeling, Monitoring and Control in Machining Processes, ASME/WAM, New Orleans, LA, November 28, 1993 – December 3, 1993.
- Elliot L. Stern, "Comprehensive Control for Turning Centers," NSF Grantees Conference on Design and Manufacturing, University of North Carolina at Charlotte, Charlotte, NC, January 6-8, 1993, pp. 1673-1676.
- E.L. Stern and S. Kadiyala, "A Knowledge-Based Control Strategy for Single Point Machining," Manufacturing Review.
- E.L. Stern and S. Kadiyala, "A Comprehensive Control Strategy for Turning," Manufacturing International 1992, ASME, 1992, pp. 77-83.

- E.L. Stern, V. Govande, and S. Kadiyala, "A Feedforward Simulation for Strategic Knowledge-Based Control of Machining Process," Proceedings of the 22nd Annual Conf on Modeling and Simulation, pp. 857-864, 1991.
- E.L. Stern and S. Kadiyala, "A System Configuration for Knowledge-Based Control of Machining Centers," Proceedings of the 22nd Annual Conf on Modeling and Simulation, pp. 865-872, 1991.
- Elliot L. Stern, "Use of Modeling and Simulation for Conceptual Design," Proceedings of the 21st Annual Conf on Modeling and Simulation, pp. 1817-1823, 1990.
- E.Stern and J. Tlusty, "A Knowledge-Based Approach to High-Speed Spindle Design," Symposium on Concurrent Product and Process Design, ASME/WAM, DE-Vol. 21, PED Vol. 36, pp. 219-226, 1989.
- Jiri Tlusty, Elliot Stern, "Use of a Structural Model in Compensation for Robot Deflections," Annals of the CIRP, Vol 34/1/1985, pp 357-363.

**Research Funding:**

- "SCE99 - A Low Emission Two-Cycle Engine," John Deere Worldwide Commercial & Consumer Equipment Division, $330,000, 1 yr, CO-PI E.L.Stern, 4/97-4/98.
- "Introduction to Team-Based Design for Students in Engineering, Business and Industrial Design," National Science Foundation, Undergraduate Curriculum and Course Development Program, $181,970, 3 yrs, CO-PI E.L. Stern, submitted in conjunction with the Thomas Walter Center for Technology Management, Auburn, University, year 1 funded for $100,000, 1/94-1/95.
- "Comprehensive Control for Turning Centers," National Science Foundation, DDM 91-01586, $40,045, 1 yr, PI E.L. Stern, performance based budget increase following annual report and proposal/request, 6/93-5/94.
- "Engineering Faculty Internship," National Science Foundation, $5,600, and Homelite/Textron, $5,386, 1 yr, PI E.L. Stern, 6/92-12/93.
- "An Inexpensive, Non-Invasive Flow Measurement Technique," Biomedical Research Support Grant, Public Health Service, $3,000, PI E.L. Stern, 2/92-8/93.
- "Comprehensive Control for Turning Centers," National Science Foundation, DDM 91-01586, $160,028, 3 yrs, PI E.L. Stern, 6/91-11/94.
- Advanced Manufacturing Technology Center, Auburn University, graduate student support, $30,000, 5/90-6/93.
- "Flexible Manufacturing Automation and Control Based on Design, Modeling and Sensor," Auburn University Competitive Research Grant-In-Aid, $6,900, 1 yr, PI E.L. Stern, 1/90-1/91.

**Independent Consultant (Partial List):**

- Boeing Aircraft, St. Louis, MO
- Chrysler Corporation, Auburn Hills, MI
- Elmore Machine Tools, Salisbury, NC
- EZGO/Textron, Augusta, GA
- Fanuc Robits, Auburn Hills MI
- Ford Motor Company, Dearborn, MI
- Gardner Denver, Peachtree City, GA
- General Engineering Services, Inc, Atlanta, GA
- General Motors Corporation, GM Powertrain Group, Livonia, MI
- General Motors Corporation, GM Powertrain Group, Buffalo, NY
- Giddins & Lewis, Fraser, MI
- Gluckman, Newman & LeVine, PA, Tampa. FL
- Homelite/Textron, Greer, SC
- Ingersoll Milling Machine Company, Rockford, IL
- J&H Machine Tools, Inc., Charlotte, NC
- John Deere, Worldwide Commercial & Consumer Equipment Division, Charlotte, NC
- Kennametal, Inc. Latrobe, PA
- Kennametal Hertel, Germany

Elliot L. Stern, Ph.D., P.E. – Curriculum Vitae – Page 4

- Mazak Corp., Florence, KY
- McCulloch Corp., Lake Havasu City, AZ
- McDonnell Douglas Aerospace, St. Louis, MO
- Mitsui Seiki, Franklin Lakes, NJ
- Orthotic Rehabilitation Products, Inc, Tampa, FL
- Robert Bosch Corporation, Automotive Group, Charleston, SC / Immenstadt, Germany
- Romi, Brazil
- Sunnen Products Company, St. Louis, MO
- Toolcraft, Morganton, NC
- United Technologies, Pratt & Whitney Canada, Quebec, Canada
- Westinghouse Electric Corporation, Winston-Salem, NC



US006071062A

# United States Patent [19]

## Warhurst et al.

[11] **Patent Number:** **6,071,062**

[45] **Date of Patent:** **Jun. 6, 2000**

[54] **APPARATUS FOR LIFTING, HANDLING, AND TRANSPORTING A CONTAINER**

[75] Inventors: **Peter S. Warhurst; William R. Courtney,** both of Belleair; **David Revelia,** New Port Richey, all of Fla.

[73] Assignee: **PODS, Inc.,** Clearwater, Fla.

[21] Appl. No.: **09/108,980**

[22] Filed: **Jul. 1, 1998**

[51] Int. Cl.⁷ ...................................................... **B60P 1/64**

[52] U.S. Cl. .......................... **414/498;** 414/347; 414/458

[58] Field of Search ..................................... 414/340, 341, 414/347, 458, 459, 460, 461, 498, 500, 501, 522, 495

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,197,375 | 4/1940 | Dafnis ................................... | 104/48 |
| 2,703,659 | 3/1955 | Hutchins ............................... | 414/498 |
| 2,937,879 | 5/1960 | Lion ..................................... | 280/13.21 |
| 3,135,407 | 6/1964 | Back ..................................... | 414/498 |
| 3,243,193 | 3/1966 | Fulmer et al. ......................... | 280/35 |
| 3,541,598 | 11/1970 | Dousset ................................. | 214/392 |
| 3,744,652 | 7/1973 | Rieschel ................................ | 414/459 |
| 3,881,689 | 5/1975 | Bury et al. ............................ | 254/45 |
| 4,297,068 | 10/1981 | Concha et al. ......................... | 414/458 |
| 4,491,452 | 1/1985 | Matovich .............................. | 414/458 |
| 4,522,550 | 6/1985 | Whitehouse ............................ | 414/498 |
| 4,712,966 | 12/1987 | Gross ................................... | 414/458 |
| 4,765,594 | 8/1988 | Riedl et al. ........................... | 254/45 |
| 4,897,011 | 1/1990 | Brower ................................. | 414/459 |
| 5,006,031 | 4/1991 | Fossing et al. ........................ | 414/458 |
| 5,417,540 | 5/1995 | Cox ..................................... | 414/498 |
| 5,800,114 | 9/1998 | Secondi ................................ | 414/498 |

*Primary Examiner*—Dean J. Kramer
*Attorney, Agent, or Firm*—Dennis G. LaPointe; Mason & Assoc., P.A.

[57] **ABSTRACT**

A hydraulically actuated mobile carrier frame wraps around a storage container of standard size and lifts the container from the ground onto a transport vehicle. The carrier frame subsequently returns the container to the ground. The carrier frame stays with the vehicle. The carrier frame can be expanded transversely to clear the vehicle for loading and unloading, then contracted into notches in the vehicle platform to be releasably locked to the vehicle for over the road transport.

**39 Claims, 8 Drawing Sheets**





*Fig. 1*



*Fig. 2*



*Fig. 3*



*Fig. 15*

*Fig. 4*



*Fig. 5*

*Fig. 6*

*Fig. 7*



**Fig. 8**

**Fig. 9**



**Fig. 10**





*Fig. 13*



Fig. 14

Fig. 14A

Fig. 14B



*Fig. 16*

6,071,062

**1**

## APPARATUS FOR LIFTING, HANDLING, AND TRANSPORTING A CONTAINER

### FIELD OF THE INVENTION

The present invention relates generally to the field of storage containers, and pertains, more specifically, to a method and apparatus for lifting and handling a storage container, loading it onto a road vehicle, transporting it to a given location, and unloading the container from the vehicle.

### BACKGROUND OF THE INVENTION

Industry often has requirements to lift and transport containers. Many freight yards and ocean shipping docks use cranes of various types with lifting cables that attach to the corner brackets that are found on most shipping containers. Methods and apparatus for lifting and transporting containers are known and, heretofore, have been configured in different ways. Some examples of container handling systems in the prior art are seen in the following U.S. patents:

Dousset, U.S. Pat. No. 3,541,598, shows two end-fitted structures, called portals, which are wheeled and have hydraulic jacks. They are attached at upper and lower corners of the container. There are no longitudinal frame elements, only transverse ones. The container thus serves as a structural frame, and must be strong enough to support typically up to 15,000 pounds of cargo. There is no method or apparatus for moving and positioning the portals from the vehicle to the container, and back. This is apparently done by hand, a difficult and dangerous task. There is no structure to quickly and safely lock the portals onto the vehicle for transport, with or without the container.

Fossing, U.S. Pat. No. 5,006,031, also uses two structures, but they are connected together after lifting. The two-wheeled sections, with hydraulic jacks, are attached to the longitudinal sides of the container, not the ends. Cross pieces are connected beneath the container. The attachment brackets have an H-shape.

Bury, U.S. Pat. No. 3,881,689, discloses a four-sided frame for lifting camper bodies. It is U-shaped to fit around the body and has a cross bar fitted across the open end. The jacks are mechanical, and raise the container with respect to the frame. There is no method or apparatus for moving and positioning the frame from the vehicle to the body, and back. The camper body cannot be lowered to the ground. The frame must be dismantled by hand and stored or carried on the vehicle.

Dafnis, U.S. Pat. No. 2,197,375, illustrates a wheeled lifter and transporter for railroad cars. The frame is disposed over the top of the container, not around it. Hydraulic jacks fit below projecting brackets on the car, raising the car with respect to the frame. There is no transport vehicle.

Lion, U.S. Pat. No. 2,937,879, shows a container with built-in hydraulic jacks with wheels, at each corner. The container structure serves as a frame. There is no transport vehicle.

Fulmer, U.S. Pat. No. 3,243,193, discloses an attachable running gear to be fitted to the ends of a container. It consists of a pair of brackets and wheels. The brackets are attached to the ends of the container, then connected together underneath. Hydraulic jacks raise the container.

Concha, U.S. Pat. No. 4,297,068, also discloses an attachable running gear to be fitted to the ends of a container. It consists of a pair of brackets and wheels, with hydraulic jacks.

**2**

Gross, U.S. Pat. No. 4,712,966, illustrates a liftable and transportable rack for stackable cargo. There is no closed container or box-like structure. A pair of wheeled brackets with hydraulic jacks fit into the rack ends.

Riedl, U.S. Pat. No. 4,765,594, displays four separate wheel and jack assemblies that are attached to the corners of the container. The jacks are rack and pinion type. The assemblies are not interconnected.

Fulmer, Concha, Riedl, and Fossing show no transport vehicle. The wheels mounted to the container form a trailer.

While the above-described inventions serve to lift and move a container, they are awkward to position around the container. They show difficulty in moving the frame and container into position. The prior art devices disclose no way of changing the width of the frame to provide clearance around the vehicle. They have no way of releasably attaching the frame to the vehicle for safe transport.

Accordingly, there is a need to provide a means for easy positioning of the frame around the container, and for moving and positioning the frame and the container together.

There is a further need to provide a method to adjust the width of the frame under power to clear the vehicle and the container when moving and positioning the frame.

There is a yet further need to provide a means for releasably attaching the frame to the vehicle for safe transport.

### SUMMARY OF THE INVENTION

The present invention is a hydraulically actuated mobile carrier frame which wraps around a storage container of standard size and lifts the container from the ground onto a transport vehicle, and subsequently back to the ground. Containers are typically 8 feet wide by 8 feet high by 16 feet long, and weigh up to 15,000 lbs. The carrier frame is not a permanent part of the vehicle, but is normally stored on the vehicle. The actuators of the present invention are actuated by gasoline engine driven hydraulic pumps mounted on the carrier frame. The carrier frame has swivel wheel assemblies incorporating hydraulic motors and a chain and sprocket drive arrangement installed to the lower end of the front upright members for providing a self-propelled and steerable carrier frame.

The above features, as well as further features and advantages, are attained by the present invention which may be described briefly as an apparatus for lifting and transporting a container having right and left sides and front and rear ends, the apparatus comprising: a carrier frame having right and left longitudinal elements juxtaposed with the right and left sides, respectively, of the container, each longitudinal element extending between opposite first and second ends, the carrier frame having front and rear transverse elements juxtaposed with the front and rear ends, respectively, of the container, each transverse element extending between opposite right and left ends, the left ends of the front and rear transverse elements being adjacent to the first and second ends, respectively, of the left longitudinal element, and the right ends of the front and rear transverse elements being adjacent to the first and second ends, respectively, of the right longitudinal element, the carrier frame further including a plurality of generally vertical upright members attached to the carrier frame, each upright member extending between opposite upper and lower ends; bearing means, attached to each upright member lower end, for ground bearing and relative movement of the upright members with the ground; elevating means for elevating and

6,071,062

3

lowering the carrier frame with respect to the ground; a transport vehicle, having a platform suitable for transporting the container and carrier frame simultaneously; steering and mobility means, connected to the carrier frame, for self-propelled mobility and directional movement of the carrier frame; and supporting means, connected to the carrier frame and to the container, for supporting the container by the carrier frame.

## BRIEF DESCRIPTION OF THE DRAWING

The invention will be more fully understood, while still further features and advantages will become apparent, in the following detailed description of preferred embodiments thereof illustrated in the accompanying drawing, in which:

FIG. 1 is a side elevational view of a transport vehicle transporting a storage container and a carrier frame constructed in accordance with the invention;

FIG. 2 is a plan view of the transport vehicle, storage container, and carrier frame of FIG. 1;

FIG. 3 is a sectional view of the transport vehicle, storage container, and carrier frame of FIG. 1, the section being taken along lines 3—3 of FIG. 1;

FIG. 4 is a side elevational view of the transport vehicle, storage container, and carrier frame of FIG. 1, showing the upright elements extended to the ground and the carrier frame and container elevated above the transport vehicle platform;

FIG. 5 is a plan view of FIG. 4, showing the transport vehicle, storage container, and carrier frame of FIG. 1;

FIG. 6 is a side elevational view of the storage container and carrier frame of FIG. 1, showing the carrier frame and container elevated above the level of the transport vehicle platform;

FIG. 7 is a plan view of FIG. 6;

FIG. 8 is a side elevational view of the storage container and carrier frame of FIG. 1, showing the carrier frame and container lowered with the container resting upon the ground;

FIG. 9 is a side elevational view of the storage container and carrier frame of FIG. 1, showing the carrier frame elevated above the level of the transport vehicle platform with the container resting upon the ground;

FIG. 10 is a plan view of FIG. 9;

FIG. 11 is a side elevational view of the storage container and carrier frame of FIG. 1, showing the carrier frame elevated above the level of the transport vehicle platform with the container resting upon the ground, and the carrier frame separated from the container;

FIG. 12 is a plan view of FIG. 11; and

FIG. 13 is a front sectional elevational view of the carrier frame of FIG. 1, showing the carrier frame lowered, the section taken along lines 13—13 of FIG. 8.

FIG. 14 is a side elevational view of the carrier frame of FIG. 1, showing the carrier frame with self-contained gasoline engine driven hydraulic pumps and relative height position of the rear transverse element.

FIG. 14A is a sectional elevation view of the carrier frame of FIG. 14 depicting the gasoline engine driven hydraulic pumps.

FIG. 14B is a sectional elevation view of the carrier frame of FIG. 14 depicting the rear transverse element.

FIG. 15 is a perspective view of the preferred embodiment of the steering and mobility means depicting front swivel wheel assembly including the hydraulic motor and sprocket chain drive.

4

FIG. 16 is a side elevational view of the carrier frame of FIG. 1 passing over the container.

## DESCRIPTION OF THE PREFERRED EMBODIMENTS

Referring now to the drawing, and especially to FIGS. 1,2,4, and 5, an apparatus for lifting and transporting a container 34 having right and left sides, 30 and 32 respectively, and front and rear ends, 31 and 33 respectively, is shown at 20. The apparatus includes a carrier frame 24 having fixed right 26 and left 28 longitudinal elements juxtaposed with the right 30 and left 32 sides, respectively of the container 34. The right longitudinal element 26 extends between opposite first 36, and second 38 ends. The left longitudinal element 28 extends between opposite first 40, and second 42 ends. The carrier frame 24 has front 44 and rear 46 transverse elements juxtaposed with the front 31 and rear 33 ends, respectively, of the container 34. The front transverse element 44 extends between opposite right 48 and left 50 ends. The rear transverse element 46 extends between opposite right 52 and left 54 ends. The left end 50 of the front transverse element 44 is adjacent to the first 40 end of the left longitudinal element 28. The left end 54 of the rear transverse element 46 and the right end 52 of the rear transverse element 46 are fixed to respective upright members 56 at sufficient height to allow the apparatus to be moved over container 34 while extended, then lowered down for attachment of carrier frame 24 to the container 34. The right end 48 of the front transverse element 44 is adjacent to the first end 36 of the right longitudinal element 26.

The carrier frame 24 includes four generally vertical upright members 56 attached to the carrier frame 24, each upright member 56 extending between opposite upper 58 and lower 60 ends. Wheels 62 are attached to each upright member lower end 60, for ground 110 bearing and relative movement of the upright members 56 with the ground 110. The upright members 56 each comprise a tubular fixed element 64 attached to the carrier frame 24 and a tubular sliding element 66 mounted for sliding movement within the fixed element 64.

Elevating means, specifically a plurality of actuators 68, is mounted within the upright members 56, for elevating and lowering the carrier frame 24 with respect to the ground 110. Each actuator 68 has opposite first 70 and second 72 ends. The first end 70 is attached to the upright member fixed element 64. The second end 72 is attached to the upright member sliding element 66. Thus, upon being actuated in an extending direction as shown by arrow 74 in FIG. 13, the actuators 68 will slidably extend the sliding element 66 from within the fixed element 64 in a telescoping manner, so as to elevate the carrier frame 24. Conversely, upon being actuated in a retracting direction as shown by arrow 76 in FIG. 13, the actuators 68 will slidably retract the sliding element 66 into the fixed element 64 in a telescoping manner, so as to lower the carrier frame 24.

A transport vehicle 78, such as a specially modified truck, is provided and has a platform 80 suitable for transporting the container 34 and carrier frame 24 simultaneously.

Although the use of steering and mobility means 120 as depicted in FIG. 15 is a preferred embodiment, a winch 98 and cable 100 can alternatively or in conjunction with the mobility and steering means 120 be connected to the carrier frame 24, for moving and positioning the carrier frame 24 with respect to the container 34, and for moving and positioning the carrier frame 24 and container 34 together

6,071,062

5

6

with respect to the vehicle **78**. In this embodiment, the winch **98** is typically mounted on the front transverse element **44**, as shown in FIG. **13**. The winch **98** is typically operated by an electric motor **102**, which is powered by a storage battery **104**. The electrical connections for these parts are not shown in the drawing, but are known to anyone skilled in the art.

Supporting means **82** are connected to the carrier frame **24** and to the container **34** for supporting the container **34** by the carrier frame **24**. Typically, the supporting means will be four chains **82** each affixed on one end to the carrier frame **24**. A hook is located on the other end of each chain **82** for engaging an eye (not shown) on the container **34**.

The carrier frame **24** includes a pair of guide wheels **122**, each wheel being mounted for rotation on a generally vertical axis on an upright member **56** adjacent the rear transverse element **46**, with the guide wheels **122** facing inward toward the container **34**. As the carrier frame **24** is being moved into position around the container **34**, the guide wheels **122** roll against the container **34** to reduce friction therewith, and thus facilitate positioning the carrier frame **24** with the container **34**.

The front **44** and rear **46** transverse elements are selectively adjustable in length, so as to allow expansion of the carrier frame **24** to clear the vehicle **78** and the container **34** for positioning, and contraction of the carrier frame **24** into close juxtaposition with the vehicle **78** and the container **34** for transport.

The front transverse element **44** further comprises a tubular fixed element **84**, and a tubular sliding element **86** mounted for sliding movement within the fixed element **84**. An actuator **88** is mounted within the front transverse element **44**. The actuator **88** has opposite first **90** and second **92** ends, the first end **90** being attached to the fixed element **84**, and the second end **92** being attached to the sliding element **86**. Thus, upon being actuated in an extending direction as shown by arrow **94** in FIG. **13**, the actuator **88** will slideably expand the sliding element **86** from within the fixed element **84** in a telescoping manner, so as to expand the carrier frame **24**. Conversely, upon being actuated in a retracting direction as shown by arrow **96** in FIG. **13**, the actuator **88** will slideably retract the sliding element **86** into the fixed element **84**, so as to contract the carrier frame **24**.

All of the actuators, in the upright elements and in the front and rear transverse elements, are typically hydraulic cylinder type actuators. The actuators are actuated by gasoline engine driven hydraulic pumps **112** mounted on the carrier frame. The hoses, valves, etc., are not shown in the drawing, but are well known, and can be adapted by anyone skilled in the art. Alternatively, the actuators may be electric motor driven screw type actuators.

As shown on FIGS. **14–16**, steering and mobility means **120** are included with the front upright members lower ends **60**. A preferred embodiment of the steering and mobility means includes swivel connection **116** and a hydraulic motor **114** wherein the drive shaft of the hydraulic motor **114** is connected to wheels **62** with a sprocket gear and chain drive **118**. Rear transverse element **46** is shown in a position sufficient to clear the height of container **34** as depicted in FIGS. **14B** and **16**.

The vehicle platform **80** includes notches **108** on either side to receive and releasably retain the upright members **56** upon contraction of the carrier frame **24** into close juxtaposition with the vehicle **78**, thereby locking the carrier frame **24** to the vehicle **78**, allowing safe transport.

The method of using the invention will now be briefly described. In order to unload the container **34** upon arrival

of the vehicle **78** at a job site, the actuators **68** in the upright members **56** will extend, thereby lowering the wheels **62** to the ground **110**, and elevating the carrier frame **24** and container **34** above the vehicle **78**. The front **44** and rear **46** transverse element actuators will be extended, thus expanding the carrier frame **24** outward from the locking notches **108**. The vehicle **78** will then be driven out from under the carrier frame **24** and container **34**, and the actuators **68** will lower the carrier frame **24** and container **34** until the container **34** rests upon the ground **110**. The supporting chains **82** will be disconnected from the container **34**, and the actuators **68** will elevate the carrier frame **24** to a height greater than that of the platform **80**. The winch **98** and cable **100** will be connected between the carrier frame **24** and the vehicle **78**. The winch **98** and cable **100** will move and position the carrier frame **24** over the vehicle **78**. In the preferred embodiment, the carrier frame **24** will be moved over the vehicle **78** using the steering and mobility means **120**. The front **44** and rear **45** transverse element actuators will be retracted. The actuators **68** will retract and lower the carrier frame **24** onto the vehicle **78**, and continue retracting so as to raise the wheels **62** off the ground **110**, thus contracting the carrier frame **24** into the locking notches **108**.

In order to load the container **34** onto the vehicle **78**, the actuators **68** in the upright members **56** will extend, thereby lowering the wheels **62** to the ground **110**, and elevating the carrier frame **24** above the vehicle platform **80**. The winch **98** and cable **100** will be connected between the carrier frame **24** and the container **34**. The winch **98** and cable **100** will move and position the carrier frame **24** into juxtaposition with the container **34**. In the preferred embodiment, the carrier frame **24** will be moved and positioned into juxtaposition with the container **34** by the steering and mobility means **120**. The actuators **68** will then lower the carrier frame **24** adjacent to the ground **110**, and the supporting chains **82** will be connected to the container **34**. The actuators **68** will elevate the carrier frame **24** and container **34** to a height greater than the vehicle platform **80**. The winch **98** and cable **100** will be connected between the carrier frame **24** and the vehicle **78**. The winch **98** and cable **100** will move and position the carrier frame **24** and container **34** over the vehicle platform **80**. In the preferred embodiment, the carrier frame **24** and container **34** will be moved and positioned over the vehicle platform **80** by the steering and mobility means **120**. The actuators **68** will retract and lower the carrier frame **24** and container **34** onto the vehicle platform **80**, and continue retracting so as to raise the wheels **62** off the ground **110**, thereby loading the container **34**. Front transverse element **44** and rear transverse element **46** are retracted, locking carrier frame **24** into notches **108**. Vertical uprights **56** fit into notches **108** for securing carrier frame **24** to platform **80**.

It is to be understood that the above detailed description of embodiments of the invention is provided by way of example only. Various details of design and construction may be modified without departing from the true spirit and scope of the invention as set forth in the appended claims.

Now that the invention has been described,

What is claimed is:

1. An apparatus for lifting, handling and transporting a container having right and left sides and front and rear ends, the apparatus comprising:

a carrier frame including right and left longitudinal elements juxtaposed with the right and left sides, respectively, of the container to be handled and transported, each longitudinal element extending

6,071,062

7

between opposite first and second ends, the carrier frame having front and rear transverse elements juxtaposed with the front and rear ends, respectively, of the container to be handled and transported, each transverse element extending between opposite right and left ends, the left ends of the front and rear elements being adjacent to the first and second ends, respectively, of the left longitudinal element, and the right ends of the front and rear elements being adjacent to the first and second ends, respectively, of the right longitudinal element, the carrier frame further including a plurality of generally vertical upright members, each upright member extending between opposite upper and lower ends;

bearing means attached to each upright member lower end, for ground bearing and relative movement of the upright members with the ground;

elevating means for elevating and lowering the carrier frame with respect to the ground;

positioning means connected to the carrier frame for moving and positioning the carrier frame with respect to the container, and for moving and positioning the carrier frame and container together with respect to a transport vehicle having a platform when the container is to be loaded on to and off from said transport vehicle;

supporting means connected to the carrier frame and to the container for supporting the container to the frame; and

means for providing hydraulic power to actuators,

wherein the carrier frame is capable of being elevated to be moved over the container and is capable of being lowered around the container for attaching the carrier frame to the container for subsequent lifting, handling and transporting of the container.

2. The apparatus of claim 1 wherein the upright members each further comprise a tubular fixed element attached to the carrier frame and a tubular sliding element mounted for sliding movement within the fixed element.

3. The apparatus of claim 2 wherein the elevating means further comprises a plurality of actuators, each actuator mounted within an upright member, each actuator having opposite first and second ends, the first end being attached to the tubular fixed element of the upright member, the second end being attached to the upright member tubular sliding element, so that upon being actuated in an extending direction, the actuators will slidably extend the sliding element from within the fixed element in a telescoping manner to elevate the carrier frame, and upon being actuated in a retracting direction, the actuators will slidably retract the sliding element into the fixed element in a telescoping manner to lower the carrier frame.

4. The apparatus of claim 1 wherein the carrier frame includes a pair of guide wheels, each guide wheel mounted for rotation on a generally vertical axis on an upright member adjacent the rear transverse element, with the guide wheels facing inward toward the container for engagement with the container to facilitate positioning the carrier frame with the container.

5. The apparatus of claim 1 wherein the front and rear transverse elements are selectively adjustable in length to allow expansion of the carrier frame to clear the transport vehicle and the container for positioning and contraction of the carrier frame into close juxtaposition with the transport vehicle and the container.

6. The apparatus of claim 5, wherein each front and rear transverse elements further comprise:

8

a tubular fixed element;

a tubular sliding element mounted for sliding movement within the fixed element;

an actuator mounted within each front and rear transverse elements, the actuator having opposite first and second ends, the first end being attached to the fixed element, the second end being attached to the sliding element, so that upon being actuated in an expanding direction, the actuator will slidably extend the sliding element from within the fixed element in a telescoping manner to expand the carrier frame, and upon being actuated in a contracting direction, the actuator will slidably retract the sliding element into the fixed element in a telescoping manner to contract the carrier frame; and

wherein the actuators mounted within each front and rear end transverse elements are hydraulic cylinder type actuators.

7. The apparatus of claim 6 wherein the actuators mounted within each front and transverse elements are electric motor driven screw type actuators.

8. The apparatus of claim 1 wherein the transport vehicle platform includes notches on either side to receive and releasably retain the upright members upon contraction of the carrier frame into close juxtaposition with the vehicle for locking engagement of the carrier frame to the transport vehicle platform.

9. The apparatus of claim 1 wherein the supporting means include a plurality of chains, each chain being fixed on one end to the carrier frame and the other end of the chain in releasable engagement with the container.

10. The apparatus of claim 1 wherein the means for providing hydraulic power to actuators is a gasoline engine driven hydraulic pump.

11. The apparatus of claim 1 wherein the container and the carrier frame may be transported simultaneously on the platform of the transport vehicle.

12. The apparatus of claim 11 wherein the vehicle platform includes notches on either side to receive and releasably retain the upright members upon contraction of the carrier frame into close juxtaposition with the vehicle for locking engagement of the carrier frame to the vehicle platform.

13. The apparatus of claim 1, wherein the bearing means are wheels.

14. The apparatus of claim 13, further comprising steering and mobility means at the upright member lower ends at the rear of the carrier frame.

15. The apparatus of claim 14, wherein the steering and mobility means and wheels attached to the upright member lower ends at the rear of the carrier frame further comprise:

a swivel connection between the wheel and the corresponding lower end of the upright member;

a hydraulic motor with a drive shaft for mounting a sprocket gear; and

a corresponding sprocket gear attached to the wheel for connecting a sprocket chain between the hydraulic motor drive shaft and the wheel.

16. An apparatus for lifting, handling and transporting a container having right and left sides and front and rear ends, the apparatus comprising:

a carrier frame including right and left longitudinal elements juxtaposed with the right and left sides, respectively, of the container to be handled and transported, each longitudinal element extending between opposite first and second ends, the carrier frame having front and rear transverse elements juxta-

6,071,062

**9**

posed with the front and rear ends, respectively, of the container to be handled and transported, each transverse element extending between opposite right and left ends, the left ends of the front and rear elements being adjacent to the first and second ends, respectively, of the left longitudinal element, and the right ends of the front and rear elements being adjacent to the first and second ends, respectively, of the right longitudinal element, the carrier frame further including four generally vertical upright members, each upright member extending between opposite upper and lower ends;

wheels, attached to each upright member lower end, for ground bearing and relative movement of the upright members with the ground;

elevating means for elevating and lowering the frame with respect to the ground;

a winch and cable connected to the carrier frame for moving and positioning the carrier frame with respect to the container, and for moving and positioning the carrier frame and container together with respect to the transport vehicle having a platform when the container is to be loaded on to and off from said transport vehicle;

supporting means connected to the frame and to the container for supporting the container by the frame; and

means for providing hydraulic power to actuators,

wherein the carrier frame is capable of being elevated to be moved over the container and is capable of being lowered around the container for attaching the carrier frame to the container for subsequent lifting, handling and transporting of the container.

**17.** The apparatus of claim **16** wherein the upright members each further comprise a tubular fixed element attached to the carrier frame and a tubular sliding element mounted for sliding movement within the fixed element.

**18.** The apparatus of claim **17**, wherein the elevating means further comprises a plurality of actuators, each actuator mounted within an upright member, each actuator having opposite first and second ends, the first end being attached to the tubular fixed element of the upright member, the second end being attached to the upright member tubular sliding element, so that upon being actuated in an extending direction, the actuators will slideably extend the sliding element from within the fixed element in a telescoping manner to elevate the carrier frame, and upon being actuated in a retracting direction, the actuators will slideably retract the sliding element into the fixed element in a telescoping manner to lower the carrier frame.

**19.** The apparatus of claim **16**, wherein the carrier frame includes a pair of guide wheels, each guide wheel mounted for rotation on a generally vertical axis on an upright member adjacent the rear transverse element, with the guide wheels facing inward toward the container for engagement with the container to facilitate positioning the carrier frame with the container.

**20.** The apparatus of claim **16** wherein the front and rear transverse elements are selectively adjustable in length, so as to allow expansion of the carrier frame to clear the transport vehicle and the container for positioning, and contraction of the carrier frame into close juxtaposition with the transport vehicle and the container.

**21.** The apparatus of claim **20**, wherein the front and rear transverse elements further comprise:

a tubular fixed element;

a tubular sliding element mounted for sliding movement within the fixed element;

an actuator mounted within each front and rear transverse element, the actuator having opposite first and second

**10**

ends, the first end being attached to the fixed element, the second end being attached to the sliding element, so that upon being actuated in an extending direction, the actuator will slideably extend the sliding element from within the fixed element in a telescoping manner to expand the carrier frame, and upon being actuated in a retracting direction, the actuator will slideably retract the sliding element into the fixed element in a telescoping manner to contract the carrier frame; and

wherein the actuators mounted within each front and rear transverse elements are hydraulic cylinder type actuators.

**22.** The apparatus of claim **16** wherein the transport vehicle platform includes notches on either side to receive and releasably retain the upright members upon contraction of the carrier frame into close juxtaposition with the transport vehicle, for locking engagement of the carrier frame to the transport vehicle platform.

**23.** The apparatus of claim **22** wherein the actuators are electric motor driven screw type actuators.

**24.** The apparatus of claim **16** wherein the supporting means includes a plurality of chains, each chain being fixed on one end to the carrier frame and the other end of the chain in releasable engagement with the container.

**25.** The apparatus of claim **16**, wherein the wheel attached to the upright member lower ends at the rear of the carrier frame further comprise:

a swivel connection between the wheel and the corresponding lower end of the upright member;

a hydraulic motor with a drive shaft for mounting a sprocket gear; and

a corresponding sprocket gear attached to the wheel for connecting a sprocket chain between the hydraulic motor drive shaft and the wheel.

**26.** The apparatus of claim **16** wherein the means for providing hydraulic power to actuators is a gasoline engine driven hydraulic pump.

**27.** The apparatus of claim **16** wherein the container and the carrier frame may be transported simultaneously on the platform of the transport vehicle.

**28.** The apparatus of claim **27** wherein the vehicle platform includes notches on either side to receive and releasably retain the upright members upon contraction of the carrier frame into close juxtaposition with the vehicle for locking engagement of the carrier frame to the vehicle platform.

**29.** A method of lifting, handling and transporting a container on to and off from a transport vehicle having a cargo carrying platform, the method comprising the steps of:

positioning a carrier frame around the container on the transport vehicle platform;

releasably attaching the carrier frame to the container;

extending rear and front upright members downward into a ground-engaging position;

elevating the carrier frame with hydraulic means and container above the transport vehicle platform;

expanding the carrier frame with hydraulic means to clear the sides of the transport vehicle platform;

driving the transport vehicle out from under the carrier frame and container;

lowering the carrier frame and container until the container rests upon the ground;

releasing the carrier frame attachment from the container;

activating a steering and mobility means for providing driving power and directional control to wheels at the lower end of the rear upright members;

6,071,062

**11**

directing the movement of the carrier frame away from the container;

elevating the carrier frame to an elevation higher than that of the transport vehicle platform;

moving and positioning the carrier frame over the transport vehicle platform;

deactivating the steering and mobility means;

retracting the carrier frame with hydraulic means to align the upright members in close proximity to the transport vehicle platform;

lowering the carrier frame to rest upon the transport vehicle platform;

retracting the upright members upward away from the ground-engaging position so that the transport vehicle is able to transport the carrier frame;

extending the upright members downward into a ground-engaging position;

elevating the carrier frame with hydraulic means above the transport vehicle platform;

expanding the carrier frame with hydraulic means to clear the sides of the transport vehicle platform;

activating a steering and mobility means for providing driving power and directional control to wheels at the lower end of the rear upright members;

directing the movement of the carrier frame away from the transport vehicle platform;

moving and positioning the carrier frame around the container;

lowering the carrier frame adjacent to the ground;

releasably attaching the carrier frame to the container;

elevating the carrier frame and container to an elevation higher than that of the transport vehicle platform;

moving and positioning the carrier frame and container over the transport vehicle platform;

deactivating the steering and mobility means;

retracting the carrier frame with hydraulic means to align the upright members in close proximity to the transport vehicle platform;

lowering the carrier frame and container to rest upon the transport vehicle platform; and

retracting the upright members upward away from the ground-engaging position so that the transport vehicle is able to transport the carrier frame and container.

**30**. The method of claim **29** further comprising the step of providing notches on either side of the transport vehicle platform for receiving and releasably retaining the upright members upon contraction of the carrier frame into close juxtaposition with the transport vehicle.

**31**. The method of claim **29**, further comprising the steps of:

mounting guide wheels on both sides of the carrier frame for engagement with the container; and guiding the carrier frame into position around the container with the guide wheels.

**32**. An apparatus for lifting, handling and transporting a container having right and left sides and front and rear ends, the apparatus comprising:

a carrier frame including right and left longitudinal elements juxtaposed with the right and left sides, respectively, of the container to be handled and transported, each longitudinal element extending between opposite first and second ends, the carrier frame having front and rear transverse elements juxta-

**12**

posed with the front and rear ends, respectively, of the container to be handled and transported, each transverse element extending between opposite right and left ends, the left ends of the front and rear elements being adjacent to the first and second ends, respectively, of the left longitudinal element, and the right ends of the front and rear elements being adjacent to the first and second ends, respectively, of the right longitudinal element, the carrier frame further including a plurality of generally vertical upright members, each upright member extending between opposite upper and lower ends;

the front and rear transverse elements being selectively adjustable in length to allow expansion of the carrier frame to clear a transport vehicle and the container for positioning and contraction of the carrier frame into close juxtaposition with the transport vehicle and the container;

bearing means attached to each upright member lower end, for ground bearing and relative movement of the upright members with the ground;

elevating means for elevating and lowering the carrier frame with respect to the ground;

positioning means connected to the carrier frame for moving and positioning the carrier frame with respect to the container, and for moving and positioning the carrier frame and container together with respect to the transport vehicle having a platform when the container is to be loaded on to and off from said transport vehicle;

supporting means connected to the carrier frame and to the container for supporting the container to the frame; and

means for providing hydraulic power to actuators, wherein the carrier frame is capable of being elevated to be moved over the container and is capable of being lowered around the container for attaching the carrier frame to the container for subsequent lifting, handling and transporting of the container.

**33**. The apparatus of claim **32** wherein the upright members each further comprise a tubular fixed element attached to the carrier frame and a tubular sliding element mounted for sliding movement within the fixed element.

**34**. The apparatus of claim **33** wherein the elevating means further comprises a plurality of actuators, each actuator mounted within an upright member, each actuator having opposite first and second ends, the first end being attached to the tubular fixed element of the upright member, the second end being attached to the upright member tubular sliding element, so that upon being actuated in an extending direction, the actuators will slideably extend the sliding element from within the fixed element in a telescoping manner to elevate the carrier frame, and upon being actuated in a retracting direction, the actuators will slideably retract the sliding element into the fixed element in a telescoping manner to lower the carrier frame.

**35**. The apparatus of claim **32** wherein the carrier frame includes a pair of guide wheels, each guide wheel mounted for rotation on a generally vertical axis on an upright member adjacent the rear transverse element, with the guide wheels facing inward toward the container for engagement with the container to facilitate positioning the carrier frame with the container.

**36**. The apparatus of claim **32** wherein the transport vehicle platform includes notches on either side to receive and releasably retain the upright members upon contraction of the carrier frame into close juxtaposition with the vehicle

6,071,062

**13**

for locking engagement of the carrier frame to the transport vehicle platform.

**37**. The apparatus of claim **32**, wherein each front and rear transverse elements further comprise:

a tubular fixed element;

a tubular sliding element mounted for sliding movement within the fixed element;

an actuator mounted within each front and rear transverse elements, the actuator having opposite first and second ends, the first end being attached to the fixed element, the second end being attached to the sliding element, so that upon being actuated in an expanding direction, the actuator will slidably extend the sliding element from within the fixed element in a telescoping manner to expand the carrier frame, and upon being actuated in a

**14**

contracting direction, the actuator will slidably retract the sliding element into the fixed element in a telescoping manner to contract the carrier frame; and

wherein the actuators mounted within each front and rear end transverse elements are hydraulic cylinder type actuators.

**38**. The apparatus of claim **37** wherein the actuators mounted within each front and transverse elements are electric motor driven screw type actuators.

**39**. The apparatus of claim **32** wherein the supporting means include a plurality of chains, each chain being fixed on one end to the carrier frame and the other end of the chain in releasable engagement with the container.

*  *  *  *  *