UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PODS, INC.,

    Plaintiff,

v.                                      CASE NO. 8:04-CV-2101-T-17MAP

PORTA STOR INC., and
CHRISTOPHER E. NEUGUTH,
individually,

    Defendants.
_____/

**ORDER**

    PODS owns the '062 patent which covers an apparatus for lifting, handling, and transporting portable storage containers. It claims Porta's lifting device infringes its patent literally (claim 29) and under the doctrine of equivalents (claim 1). Porta denies this and argues the patent is invalid due to obviousness. At this stage, both sides dispute claim 29's use of the terms, "positioning the carrier frame around the container." Porta contends the '062's claims, specification, and prosecution history require these terms to be read in conformity with the four-sided carrier frame described in claim 1. PODS, on the other hand, maintains these independent claims vary in scope and each should be read separately in context. Having considered the parties' arguments, I find a person of ordinary skill in the art would not read claim 29 to limit the carrier frame to only four sides.

    *A. Procedural Background*

    In an effort to narrow the justiciable issues, this Court directed the parties engage in a claim construction process aimed at producing a joint claim construction statement (doc. 81).

After reviewing their joint statement (doc. 110), the Court convened a status hearing, thoroughly questioned counsel for the parties, and concluded no real dispute existed regarding the language used in the challenged claims (doc. 116, p.42).  Both sides agreed the term, "carrier frame," as used in claims 1 and 29 referred to the foundational structure supporting the portable container lifted onto and from the transporting vehicle.  Both sides also seemed to recognize that the surrounding language (or the lack thereof) in claims 1 and 29 defined or refined the claimed embodiment. *Id.* Yet, despite the Court's efforts at identifying and eliminating claim construction issues, claim construction questions surfaced at the recent final pretrial conference.  Accordingly, the Court directed the parties to file additional position papers (docs. 136, 138).  This order resolves these claim construction issues by defining the terms, "carrier frame around the container," in claim 29 pursuant to the principles outlined in *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd,* 535 U.S. 722 ( 2002); *Markman v. Westview Instruments,* 517 U.S. 370 (1996); and *Phillips v. AWH Corp,* 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*).[1]

   *B.  Claim 29*

While the parties dispute the meaning of "carrier frame" in claim 29, they notably do not argue about its meaning in claim 1.  Both sides agree claim 1 describes an apparatus that uses a four-sided or rectangular-shaped carrier frame for positioning and supporting the container: "a

---

[1] Although the Court did not notice the January 10, 2006, status conference as a *Markman* hearing, the specific purpose of the hearing was to discuss and identify claim construction issues. Irrespective, *Markman* does not require a district court to follow any particular procedure in conducting claim construction.  District courts have wide latitude in how they conduct the proceedings before them, and there is nothing unique about claim construction that requires a court to proceed according to a particular protocol.  All *Markman* requires is that the trial court construe the claims to the extent necessary to determine whether the accused device infringes.  And a court may approach that task in any way it deems best.  *See Ballard Medical Products v. Allegiance Healthcare Corp.,* 268 F.3d 1352, 1358 (Fed. Cir. 2001).

carrier frame including right and left longitudinal elements juxtaposed with right and left sides, respectively, of the container to be handled and transported, each longitudinal element extending opposite first and second ends, the carrier frame having front and rear transverse elements juxtaposed with the front and rear ends, respectively, of the container to be handled and transported …" *See* doc. 111-2, ex. 1.  Indeed, PODS concedes the accused device, which embodies a u-shaped or open-ended carrier frame, does not literally read on this claim.  Hence, PODS argues Porta's device infringes claim 1 by the doctrine of equivalents, a contention Porta denies.

>Claim 29 is a different matter.  That claim reads:
>
>"a method of lifting, handling, and transporting a container on to and off from a transport vehicle having a cargo carrying platform, the method comprising the steps of: positioning the *carrier frame around* the container on the transport vehicle platform; releasably attaching the carrier frame to the container; … moving and positioning the *carrier frame around* the container …"

Although this method claim omits any reference to claim 1's four-sided apparatus language ("a carrier frame including right and left longitudinal elements … having front and rear transverse elements …"), Porta takes claim 1's four-sided carrier frame and superimposes it on claim 29 reasoning the '062's prosecution history and specification demand this interpretation. Moreover, Porta asserts claim 29's inclusion of the term, "around," adds to this four-sided conclusion.  That term dictates the shape of the carrier frame in relation to the container, a carrier frame that *surrounds* the container on *all four* sides.  Hence, the 062's metes and bounds strictly map out a four-sided carrier frame.

>PODS disagrees.  It argues one skilled in the art would read "carrier frame around the container" in the context of each claim.  This hypothetical person would also look to the presence

or absence of any modifying language in that claim to decide the boundaries of the claim's carrier frame. For example, claim 1 identifies a four-sided frame "around" the container: "where the *carrier frame* [previously described as a four-sided frame in this claim] is capable of being lowered *around* the container for attaching the carrier frame to the container for subsequent lifting, handling, and transporting the container." *See* doc. 111-2, col. 7, lines 31-35. Because claim 1 specifically describes a four-sided frame, *around* necessarily means a frame that *surrounds* the container on *all* sides. Conversely, claim 29 omits claim 1's four-sided language. That omission presumably carries consequences. Without claim 1's four-sided language, the carrier frame described in claim 29 is less precise and limited. *Around* no longer carries claim 1's definite meaning as claim 29 has changed the frame's perimeter. Claim 29 describes a carrier frame with a different relationship to the container than the one in claim 1. For claim 29, *around* means on *all* or *various* sides of the container or *about* the container. To illustrate its position, PODS offers a descriptive example: a child wraps her arms *around* her father's waist but she is unable to completely encircle his waist. Despite her physical shortcomings, the child has put her arms *around* her father's torso or, more accurately stated, *about* his waist. Hence, *around* implies a carrier frame that supports a container by wrapping *around* the container on all sides *or* less than all sides.

    C. Discussion

        1. *interpretive principles*

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips,* 415 F.3d at 1312 (citations to quoted material omitted). The words of a claim are generally to be given their ordinary and

customary meaning using the perspective of someone of ordinary skill in the applicable art. *Phillips,* 415 F.3d 1312-1313.  With this same perspective, a court tasked with resolving a claim construction dispute studies the claims and specification, the patent's prosecution history, and, if necessary, consults with outside relevant sources.  But not all these sources stand on equal footing.  The last two are less reliable and persuasive than the first.  While the patent's prosecution history can potentially reveal how the PTO and the inventor understood the patent, their dialogue often lacks clarity, particularly when compared to the specification.  *Phillips,* 415 F.3d at 1317.  Therefore, a patent's prosecution history is less useful than the specification.  *Id.*  Instead, the file wrapper primarily serves to exclude any interpretation the patentee disclaimed during prosecution.  *Id* citing *Chimie v. PPG, Indus., Inc.,* 402 F.3d 1371, 1384 (Fed. Cir. 2005); *see also Festo, supra,* 535 U.S. at 733-737 (prosecution history estoppel requires that the claims of a patent be interpreted by reference to those that have been cancelled or rejected during the proceedings before the PTO).  And while the court can in its discretion look to extrinsic evidence (like expert and inventor testimony, dictionaries, and learned treatises), such evidence is less persuasive and reliable than the intrinsic record.  *Phillips,* 415 F.3d at 1317 - 1318 (citing reasons why).

     Concomitant with these evidentiary concepts, general interpretive principles factor in the claim construction calculus.  Often, the specification (like the '062's) and the sketches describe a very specific embodiment of the invention.  Yet, the Federal Circuit warns construing courts to guard against limiting the claims to the specification's preferred embodiment.  *Id* at 1323 ("In particular, we have expressly rejected the contention that if a patent describes only a single embodiment, the claims of a patent must be construed as being limited to that embodiment.").  Unless one skilled in the art would confine the claims to the preferred embodiment (namely,

conclude the embodiment defines the outer limits of the claims so that the two are coextensive with each other), the general rule is that the claims are not to be confined to the embodiment. The reason for this result is that "persons of ordinary skill in the art rarely would confine their definitions of terms to the exact representations depicted in the embodiments." *Id.* Along these lines, claims are presumed to vary in scope. *Comark Communications, Inc. v. Harris Corp.,* 156 F.3d 1182, 1187 (Fed. Cir. 1998) citing *Tandon Corp. v. United States Int'l Trade Comm'n,* 831 F.2d 1017, 1023 (Fed. Cir. 1987) ("[t]here is presumed to be a difference in meaning and scope when different phrases are used in separate claims"). Each claim, therefore, means something, and the differences between claims are presumptively significant. *Id.* While the doctrine of claim differentiation is not a "hard and fast rule," it simply implements a commonsense notion. *Id ; see also Chisum on Patents,* § 18.03[6]. When it is applied to two independents claims, like here, two considerations generally govern: (1) claim differentiation takes on relevance in the context of claim construction that would render additional, or different, language in another independent claim superfluous; and (2) claim differentiation cannot broaden claims beyond their correct scope. *Curtiss-Wright Flow Control Corp. v. Velan, Inc.,* 438 F.3d 1374, 1381 (Fed. Cir. 2006).

      2. *applying the principles*

Much of Porta's argument for a four-sided frame rests on its reading of the '062's prosecution history. True to *Phillips's* warning about prosecution history, the '062's history exemplifies the ambiguity that makes such evidence less useful than the specification for claims interpretation. *Phillips,* 415 F.3d at 1317.[2] Irrespective, Porta seizes on patentee counsel's

---

[2] *Phillips* directs a claim construction court to "consider the patent's prosecution history, *if it is in evidence."* 415 F.3d 1317 (emphasis added). It also defined the prosecution history as "the *complete record* of the proceeding before the PTO and includes the prior art cited during the

response to the examiner to make its estoppel argument, a response that dealt with the examiner's complaints about unclear language in claims 4, 6, 10-19, and 21-24: "[a]s the examiner acknowledges, the Dousset reference [prior art noted in the application] clearly lacks the teaching of the *singular rectangular-shaped frame*." *See* doc. 111-7, p. 18.[3]  From this, Porta extrapolates PODS "surrendered any claims for a carrier frame having anything but a singular rectangular-shaped frame." *See* doc. 110 at p. 18.  But that exchange, when considered in context, fails to support a clear, decisive surrender of subject matter.  *See Aquatex Industries, Inc. v. Techniche Solutions,* 419 F.3d 1374, 1382-83 (Fed. Cir. 2005) (prosecution history estoppel and argument-based estoppel require a showing of clear and unmistakable surrender of subject matter by amendments or arguments to examiner); *Salazar v. Proctor & Gamble Co.,* 414 F.3d 1342, 1344 (Fed. Cir. 2005) (same).  If anything, the examiner's perception about the clarity of the '062's language highlights the inherent difficulties encountered by using words to define the property boundaries of a technical invention.  *See Festo,* 535 U.S. at 731 ("Unfortunately, the nature of language makes it impossible to capture the essence of a thing in a patent application.").

Initially, claim 29 appeared as claim 22.  The examiner rejected that claim and others (4, 6, 10-19, and 21-24) because its language made "the limitations regarding the frame, carrier frame, and the carrier … unclear." *See* doc. 111-7 at pp.7, 16.  Patentee's counsel answered the rejection asserting the examiner had misconstrued the prior art and the teaching of Dousset in particular.

---

examination of the patent."  *Id* (emphasis added).  Neither party has submitted the '062's complete file wrapper.  Instead, the parties offered only select portions.  *See* doc. 111-7.

[3] The examiner's report or documentation of his actions are not part of the record.  The parties have submitted instead the patentee's response and characterization of the examiner's actions.

Unlike the '062' device which integrated frame, container, and transport vehicle in a connected unit, Dousset required "specially designed containers" so that spindles or pins could be secured to the corresponding female connections on the container. *Id* at 17-18. Dousset used two end-fitted hydraulic jacks (portals) with transverse frame elements to lift the container. The container's longitudinal frame elements added structural support for lifting (the lifting apparatus had no longitudinal support elements). The operator had to position these hydraulic jacks to and from the container by hand; thus, Dousset did not offer an easy and safe method for integrating the lifting mechanism, container, and transport vehicle. Nothing from Porta's quoted exchange supports its estoppel argument. Besides, the comments miss the clarity needed for surrendering all but a four-sided frame, particularly given patentee's counsel's prefatory remarks to the examiner: "[the applicant by amending claims was] not intending in any manner to narrow the scope of the originally filed claims." *Id* at p. 16.

Instead of surrendering subject matter, these remarks, when considered in the context of the specification, highlight the prior art's shortcomings and the '062's gains. Namely, whether the earlier art used two, three, or four-sided frames, all the devices suffered a common denominator. Each lacked a unit that integrated lift, frame, container, and transporting vehicle. Some lacked a transport vehicle, others made using the lifting device awkward and unsafe, and others made the relationship between container and the transporter difficult. *Id.* The '062, in contrast, promoted a unit that easily positioned the frame to the container and then moved the container onto or from the transport vehicle. This integration is the core of the invention – not the frame's configuration as Porta suggests. The specification bears this out:

> "Accordingly, there is a need to provide a means for easy positioning of the frame around the container, and for moving and positioning the frame and the container

together … to provide a method to adjust the width of the frame under power to clear the container when moving and positioning the frame … [and] to provide a means for releasably attaching the frame to the vehicle for safe transport."

*See* doc. 111-2, col. 2, lines 19-29.

These words echo claim 29's method. Porta's estoppel argument is misplaced. Accepting it would require sidestepping two basic principles of construction: guarding against limiting claims to the preferred embodiment and claims are considered to vary in scope.

*D. Claim Construction Conclusion*

The term "around," as used in Claim 29 means "on all four sides or on less than all four sides." The PODS "carrier frame" is not limited to a four-sided, rectangular shaped frame.

IT IS SO ORDERED at Tampa, Florida on June 5, 2006.

*Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

cc:     Counsel of Record