UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PODS, INC.,

        Plaintiff,

        v.                               CASE NO. 8:04-CV-2101-MAP

PORTA STOR INC., and
CHRISTOPHER E. NEUGUTH,
individually

        Porta.
_____/

## **ORDER**

PODS, a nationwide storage business that owns a patent (the '062 patent) covering an apparatus that lifts, handles, and transports portable storage containers, sued Porta for infringement of that patent, among other claims. After a three day trial, the jury awarded PODS $1,500 as a reasonable royalty for patent infringement, $0 for copyright infringement, $1 for federal false advertising and unfair competition, and $15,000 for Florida unfair competition. Per 17 U.S.C. § 504(c)(1), the Court increased the copyright damages to the statutory minimum of $750 (doc. 172). Now, PODS moves this Court for an award of attorney's fees in the amount of $691,058.44 (doc. 200). After consideration, PODS' motion for attorney's fees is granted to the extent that Porta is directed to pay $323,321.27.

    *A. Discussion*

        *1. Attorney's fees awards in patent infringement cases*

Per 35 U.S.C. § 285, a court has the discretion to award attorney's fees to a prevailing party in "exceptional" cases. Courts have held that the types of conduct necessary to label a

case as "exceptional" includes "willful infringement, inequitable conduct before the Patent and

Trademark Office, misconduct during litigation or unjustified litigation, and frivolous suit."

*Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989).

Unquestionably, PODS qualifies as a prevailing party under the statute.  The Court granted

PODS's Rule 50 motion on patent infringement (based on the Court's claim construction

ruling, Porta in effect conceded infringement as to claim 29).  Consequently, the jury found

Porta willfully infringed the '062 patent.  Accordingly, I find that this case falls into the

"exceptional" category allowing for a fee recovery.

> *2.  Fee petition rules*

The starting point in fashioning an award of attorneys' fees is to multiply the number of

hours reasonably expended by a reasonable hourly rate.  This "lodestar" may then be adjusted

based upon other considerations, which include the results obtained and the quality of

representation. *Duckworth v. Whisenant,* 97 F.3d 1393, 1396 (11th Cir. 1996); *Norman v.

Housing Authority of City of Montgomery,* 836 F.2d 1292 (11th Cir. 1988).  The fee applicant is

responsible for submitting satisfactory evidence to establish both that the requested rate is in

accordance with the prevailing market rate and that the hours are reasonable.[1]  *Duckworth*, 97

F.3d at 1396; *Norman*, 836 F.2d at 1303.  Failure to adequately document hours may result in a

reduction as will a claim for hours the court finds excessive or unnecessary. *Hensley v.*

---

[1] Usually, the fee petitioner presents an affidavit by a local attorney not associated with the case who is familiar with prevailing market rates in the area. Here, PODS' counsel offered an affidavit of a local attorney in order to show the prevailing market rate for local counsel, but submitted only a personal affidavit to show that the fees for non-local counsel are reasonable. However, at the hearing on the motion for attorney fees, PODS presented evidence regarding rates charged by New York City law firms.

*Eckerhart*, 461 U.S. 424, 433 (1983).[2]

   *3. Hourly Rates*

  The established basis for determining a reasonable hourly rate is the prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community. *Duckworth,* 97 F.3d at 1396; *Scelta v. Delicatessen Support Services, Inc.*, 203 F.Supp.2d 1328, 1334 (M.D.Fla. 2002) (the "general rule is that the relevant market... is the place where the case is filed."). The exception is if the fee applicant can demonstrate a lack of non-local counsel willing and able to handle the claims. *See ACLU of Georgia v. Barnes*, 168 F.3d 423, 437 (11th Cir. 1993) (prevailing party is not entitled to have losing party pay for an attorney with the most expertise regardless of price, but only for one with reasonable expertise at the market rate).

  Despite the relevant market rule, PODS seeks to recover New York hourly rates, which range from $230 to $625 per hour, for junior level associates up to senior partners.[3] PODS claims that in complex patent litigation such as this, it should be able to hire the best counsel available and recover those fees accordingly. However, PODS fails to meet the exception; namely, that similar attorneys were unavailable in the local market. In short, PODS, for a case that was relatively straightforward and uncomplicated, chose to hire New York counsel after

---

[2] The Federal Circuit's standards regarding fee petitions and attorney fee awards are similar to the Eleventh Circuit's position. *See Slimfold Mfg. Co., Inc. v. Kinkead Industries, Inc.*, 932 F.2d 1453, 1459 (Fed.Cir. 1991) (citing *Norman, supra,* with approval); *Mathis v. Spears*, 857 F.2d 749 (Fed.Cir. 1988).

[3] It should be noted that the same New York attorneys worked at different law firms at different stages of this litigation. In October 2004, PODS hired Jones Day and in late 2005 those attorneys moved to Jenner & Block.

initially retaining local counsel (local counsel filed the complaint and successfully obtained a preliminary injunction against Porta). Despite this change in representation, PODS's legal theories and core evidence remained notably the same. PODS simply has not shown local counsel were unwilling, unavailable, or so unskilled as to be unable to represent it in this action.

Therefore, PODS's New York attorneys' hourly rates are reduced by twenty percent. *See Norman*, 836 F.2d 1292 (a court may reduce an award in accordance with its own expertise and judgment). This across the board reduction brings the New York lodestar closer in line with the Tampa market rate. *See Scelta*, 203 F.Supp.2d 1328 (court approving New York attorney's own 30% reduction in hourly rates as good faith effort to bring them in line with the prevailing Tampa rates). The hourly reductions are as follows:

> Joseph Diamante –$64,792.5 reduced by 20% = $51,834[4]
>
> Richard An – $232,896.25 reduced by 20% = $186,317[5]
>
> Stein – $6,110 reduced by 20% = $4,888[6]
>
> Wilhelm – $22,500 reduced by 20% = $18,000[7]
>
> Misc. attorneys –$5,562.5 reduced by 20% = $4,450[8]
>
> *4. Reasonableness of the number of hours expended*

---

[4] Diamante billed 106.5 hours at a rate ranging from $550–$625. It is also noted that the Court subtracted Mr. Diamante's double trial billing, addressed later in this order, before applying the 20% reduction to his rates.

[5] An billed 625.75 hours at a rate ranging from $320–$435.

[6] Stein billed 11.5 hours at a rate ranging from $500–$540.

[7] Wilhelm billed 56.25 hours at a rate ranging from $370–$400.

[8] This includes billing for 21 hours at a rate ranging from $230–$280.

Fee applicants are required to exercise billing judgment.  *Hensley,* 461 U.S. at 434 (1983); *Norman*, 836 F.2d at 1301.  Excessive, redundant, or otherwise unnecessary hours should be excluded from the amount claimed. *ACLU of Georgia,* 168 F.3d at 428 (11th Cir. 1999).  Simply put, if it would be unreasonable to bill the client, it is unreasonable to bill one's adversary. *Norman* at 1301.  Exclusions for excessive or unnecessary work on given tasks must be left to the discretion of the court, but if the court disallows hours, it must explain which hours are disallowed and show why an award of those hours would be improper.  *Id.* at 1301, 1304; *Perkins v. Mobile Housing Bd.,* 847 F.2d 735, 738 (11th Cir. 1988).  If the fee application and supporting documentation is voluminous, however, *Norman's* hour-by-hour review is impractical and a waste of judicial resources.  When faced with a massive fee application, most courts, including the Eleventh Circuit, recognize the utility of across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure.  *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) (adopting the approach of other circuits).

In its fee petition, PODS provides a summary of activities and amounts billed (doc. 200).  And, despite the requirement that a fee opponent should be reasonably precise in his objections, *Norman*, 836 F.2d at 1301, Porta fails to meaningfully reply to PODS's motion.  *See also Gray v. Lockheed Aeronautical Systems Co.*, 125 F.3d 1387 (11th Cir. 1997) (a fee opponent's failure to explain exactly which hours he views as unnecessary or duplicative is generally viewed as fatal).  Nonetheless, this Court abides by the Eleventh Circuit's reminder that district courts "are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *ACLU of Georgia,* 168 F.2d at 428.  With these rules in mind, I find some of PODS's

5

demands to be unreasonable and excessive.

      *a.  Paralegal hours*

PODS seeks payment for 314 hours at $165-235 ($62,020.25), for work done by Mark Scholl, a paralegal with PODS's New York counsel.[9]  I find this request inappropriate.  As Porta points out in its response, the vast majority of Mr. Scholl's work involved clerical and secretarial duties.  The Eleventh Circuit makes clear the efforts of paralegals are only recoverable to the "extent that the paralegal performs work traditionally done by an attorney." *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988).  Where the work performed does not comport with the above, the circuit views it as falling in the category of overhead expenses. *Scelta v. Delicatessen Support Services, Inc.*, 203 F.Supp.2d 1328, 1334 (M.D.Fla. 2002) (citing *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (5th Cir. 1982)).  Moreover, though a small portion of the hours may be compensable, PODS has grouped these hours in the same entry with uncompensable hours; consequently, compensable and non-compensable hours are indistinguishable. *Scelta*, 203 F.Supp.2d at 1335 (excluding entire entry when non-compensable and compensable hours are grouped together).  Besides, for the same reasons New York rates are inappropriate for counsel, they are inappropriate for paralegal work.

      *b.  "related expenses"*

PODS includes $42,738.05 in "related expenses" in its request for attorney's fees.  These expenses include telephone calls, travel expenses, lodging and meals, research costs, and photocopying, among others.  These costs are not properly before this Court.  The proper method

---

[9] Scholl originally billed at the firm Jones Day and left with the other attorneys in this matter in the move to Jenner & Block.  He billed 155.75 hours with Jones Day and 158.25 with Jenner & Block.

would have been for PODS to file a verified bill of costs with the Clerk within the time provided by Local Rule 4.18.  PODS missed this deadline.

### c. Expert witness fees

PODS seeks to recover $74,393.51 in fees spent on expert witness services, which it contends are recoverable under Federal Circuit precedent.  *See Mathis v. Spears*, 857 F.2d 749 (Fed.Cir. 1988); *Central Soya Co. v. Geo A. Hormal & Co.*, 723 F.2d 1573, 1578 (Fed.Cir. 1983).  But these cases stand only for the proposition that fees and expenses incurred while preparing for litigation as well as during litigation, are allowed as attorney's fees under 35 U.S.C. § 285.  None, however, speak about recovering expert witness fees.  The reason is clear. The Federal Circuit in *Amsted Ind. v. Buckeye Steel Castings*, 23 F.3d 374 (Fed.Cir. 1994), specifically ruled that expert witness fees were not recoverable under § 285 (finding abuse of discretion in district court's award of expert witness fees, since there was no bad faith or fraudulent conduct).  The *Amsted* court reversed the district court's award of expert fees and remanded for a calculation in accordance with 28 U.S.C. § 1920.  Under § 1920, expert witness fees are limited to the costs allowed to other witnesses, such as a per day payment, along with subsistence and travel.  Because PODS has not filed a bill of costs, even those fees are not properly before this Court.

### d. Miscellaneous

Porta objects to charges for motions to bring electronic equipment to trial, $505, and for time spent by an associate to learn basic patent law, $535 (doc. 199, p. 5).  This Court agrees these charges are inappropriate and reduces $1,040 from the fee award.

### e. Trial

PODS bills for four trial attorneys, Williams, An, Diamante, and Morris, and one paralegal, Lavigne.  Yet, only two attorneys participated in the trial, Williams and An.  This multiple billing is inappropriate and unnecessary.  As such, $24, 390 in fees are deducted as follows:

> Joseph Diamante – 20 hours @ $625 per hour = $20,000
>
> Laurie Morris – 24 hours @ $135 per hour = $3,240
>
> Patricia Lavigne – 11.5 hours @ $100 per hour = $1,150

### f. Non-patent claims

Patent infringement has always been the cornerstone of this case.  In fact, PODS did not seriously litigate the non-patent claims (copyright infringement, federal and Florida unfair competition, and Florida unfair and deceptive trade practices) until the trial.  The reason for this is obvious.  These claims, taken individually, were never economically worthwhile litigating given their minor nature (Porta's copying of a PODS contract and Porta's replicating PODS's business card).  Indeed, without the patent infringement claim, PODS would never have sued Porta.  These claims served as mere window dressing to the prosecution of the patent claim.  Despite their economic insignificance and the jury's nominal or minimal awards, PODS lumps them indiscriminately with its patent expenses.  It argues it is entitled to fees that far exceed its damages on these claims because the corresponding statutes allow for a recovery of reasonable attorneys fees to the prevailing party.  While this is true, the decision to award fees is within the discretion of the court. *See Montgomery v. Noga*, 168 F.3d 1282 (11th Cir. 1999) (attorney fees awarded in copyright infringement actions as a matter of the court's discretion); *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332, 1335 (11th Cir. 2001) (attorney fees awarded

in exceptional cases under 15 U.S.C. § 1117 at the discretion of the trial judge; exceptional can

be characterized as malicious, fraudulent, deliberate and willful); *United Feature Syndicate, Inc.*

*v. Sunrise Mold Co., Inc.*, 569 F.Supp. 1475, 1481 (S.D.Fla. 1983) (fees may be granted to

prevailing party in the court's discretion under Fla.Stat. § 501.211).   Nonetheless, even if the

trial court finds that the circumstances of the case are, in fact, exceptional, the decision whether

to award attorney's fees is still discretionary. *See Jellibeans, Inc. v. Skating Clubs of Georgia,*

*Inc.*, 716 F.2d 833, 846 (11th Cir. 1983) (decision to award fees is discretionary in 15 U.S.C. §

1117 violations).

I find it inappropriate to award PODS fees for the non-patent claims.  None of them are

exceptional.  If anything, all are exceptionally unexceptional.  Because prosecution of the non-

patent claims amounted to approximately twenty percent of the total trial time, a twenty percent

reduction of trial fees is appropriate (this amounts to a reduction of $72,142.43).  This figure also

takes into account the minimal pretrial time spent on these claims.

### g.  *Appeal*

PODS seeks $22,639.68 in attorney's fees for successfully defending against Porta's two

interlocutory appeals to the Federal Circuit.  The first dealt with an order denying a motion to lift

the preliminary injunction, and the second appealed an order on a motion to compel.  This is not

properly before this Court, and such a request should have been made to the Federal Circuit. *See*

FRAP 38.

### B.  *Conclusion*

Although PODS seeks $691,058.44 in fees and costs, I have reduced this amount to

$323,321.27 finding that sum as reasonable.  Admittedly, even this amount may seem at odds

with the minimal jury verdict.  But the verdict minimally represents the stakes of the litigation.

The heart of the dispute, and the real property value at stake, was PODS's interest in the '062

patent.  With the preliminary injunction secure, PODS's damages were destined to be small.

That, however, did not end the dispute.  Porta doggedly pursued the litigation claiming prior art

rendered the '062 obvious.  PODS litigated the case aggressively to protect its rights and its

future.  After consideration, and for the reasons stated above, it is hereby

ORDERED:

1.  PODS' motion for attorney's fees (doc. 200) be GRANTED to the extent that Porta is

directed to pay PODS $323,321.27.  In all other respects, the motion is DENIED.

IT IS SO ORDERED at Tampa, Florida on August 25, 2006.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

cc:    Counsel of Record